UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KENTUCKIANS FOR THE COMMONWEALTH<br>131 North Mill Street<br>London, KY 40741,<br><br>FRIENDS OF THE CHATTAHOOCHEE<br>20181 SR 39<br>Blakely, GA 39823,<br><br>and<br><br>SIERRA CLUB<br>85 Second St., Second Floor<br>San Francisco, CA 94105-3441<br><br>      Plaintiffs,<br><br>vs.<br><br>STEPHEN L. JOHNSON<br>Administrator<br>United States Environmental Protection Agency<br>Ariel Ross Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460<br><br>      Defendant. | Civ. No. |

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

I. INTRODUCTION

1.  Plaintiffs KENTUCKIANS FOR THE COMMONWEALTH, FRIENDS OF THE

1

CHATTAHOOCHEE, AND SIERRA CLUB challenge the failure of Defendant STEPHEN L. JOHNSON, Administrator of the United States Environmental Protection Agency ("EPA") to perform mandatory duties required by the Clean Air Act, 42 U.S.C. §§ 7401-7671q. Specifically, the Clean Air Act establishes a mandatory deadline for Defendant to review the New Source Performance Standards ("NSPS") for coal preparation plants, to update those standards as necessary, and to publish notice of such actions in the Federal Register. Defendant has failed to meet this deadline, and Plaintiffs thus bring this action to protect the interests of their members who live in areas that are or will be affected by emissions of air pollutants from new or newly modified coal preparation plants.

## II. JURISDICTION, VENUE, and NOTICE

2.  This is a Clean Air Act citizen suit. Thus, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

3.  This Court has authority to award the relief sought pursuant to 42 U.S.C. § 7604(a), 28 U.S.C. §§ 2201 (declaratory relief) and 2202 (injunctive relief), and 5 U.S.C. §§ 705, 706.

4.  The acts and omissions allegedly giving rise to the claims in this case occurred in the District of Columbia. Furthermore, Defendant Stephen L. Johnson officially resides in the District of Columbia. Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) and (2).

5.  As required by the Clean Air Act, 42 U.S.C. § 7604(b)(2), on November 23, 2005, Plaintiff mailed to Defendant written notice of intent to sue regarding the violations alleged in

this Complaint. More than sixty days have passed since Defendant received Plaintiffs' notice of intent to sue letter. Defendant has not acted to remedy the violations alleged in this complaint. Therefore, a present and actual controversy exists between the parties.

## III. PARTIES

6.  Plaintiff KENTUCKIANS FOR THE COMMONWEALTH ("KFTC") is an organization that strives to improve the quality of life for all Kentuckians. KFTC has worked for over two decades to ensure that coal industry regulations are sufficiently protective of the environment. Many of KFTC's members live and own homes near coal mines which operate coal preparation plants that are subject to the NSPS or may be subject in the future to the NSPS for such facilities. The emissions from the coal preparation plants contribute to the layers of dust which cover the homes of these KFTC members. EPA's ongoing failure to review the NSPS for coal preparation plants and to revise those NSPS to reflect the technological progress which has occurred over the last 16 years is partially responsible for the inconvenience and expense that KFTC's members have incurred and will incur as a result of the dust created by coal preparation plant emissions. This dust problem would be reduced if EPA reviewed the NSPS for coal preparation plants and revised them as necessary to reflect the technological advances that have taken place in the last 16 years.

7.  Plaintiff FRIENDS OF THE CHATTAHOOCHEE ("FOC") is an organization dedicated to protecting the natural environment in southwest Georgia. FOC members live, work, recreate, and obtain spiritual and aesthetic pleasure from locations near a proposed coal-fired power plant that will be subject to the NSPS for coal preparation plants and that will be adversely affected by

emissions from proposed coal-fired power plant which would be reduced if EPA reviewed the NSPS for coal preparation plants and revised them as necessary to reflect the technological progress which has occurred since the last such review.

8.     Plaintiff SIERRA CLUB is one of the nation's oldest and largest environmental organizations. The Sierra Club has long been involved in air pollution issues. Sierra Club members live, work, farm, recreate, grow food, own land and structures, and obtain spiritual and aesthetic pleasure from locations that are adversely affected by the air pollution emitted from coal preparation plants which are subject to, or may in the future be subject to the NSPS. Sierra Club and its members are also active participants in the air pollution permitting process for numerous coal-fired power plants and steel mills which include as part of their operations coal preparation plant facilities subject to the NSPS. In addition, Sierra Club members require timely information about the present state of air pollutant emissions control technology in order to conduct their air pollution control work. EPA's failure to undertake a review of the coal preparation plant NSPS and to publish its conclusions as to their continued efficacy adversely affects Sierra Club's ability to engage in its air pollution control work.

9.     The agency actions sought herein include completion of agency review of the adequacy of the existing NSPS for coal preparation plants and the making of any necessary revisions in those standards. This review process offers Plaintiffs and their members and staff an opportunity to advocate for more accurate and protective NSPS. Plaintiffs and their members and staff have repeatedly availed themselves of such advocacy opportunities and will continue to do so in the future. Failure to complete the NSPS review process deprives Plaintiffs' members and staff of these advocacy opportunities.

10.  For the foregoing reasons, the failures of Defendant challenged in this case have caused, are causing, and unless this Court grants the requested relief, will continue to cause Plaintiffs' members and staff injuries for which they have no adequate remedy at law.

11.  Defendant STEPHEN L. JOHNSON is the Administrator of the United States Environmental Protection Agency ("EPA"). In that role Administrator Johnson has been charged by Congress with the duty to administer the Clean Air Act, including the duty to review and revise as necessary the NSPS.

## IV. CLEAN AIR ACT REQUIREMENTS

12.  The Clean Air Act ("CAA") aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). To help meet this goal, section 111 of the Clean Air Act requires EPA to establish and update standards of performance for new and newly modified sources of pollutant emissions. See 42 U.S.C. § 7411 (Standards of performance for new stationary sources).

13.  Section 111(b)(1)(A) requires EPA to compile a list of categories of stationary sources which, in the judgment of the Administrator, "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A).

14.  For each source category identified pursuant to section 111(b)(1)(A), section 111(b)(1)(B) requires EPA to promulgate standards of performance for new and modified sources within each such source category – the NSPS. 42 U.S.C. § 7411(b)(1)(B).

15. NSPS must reflect "the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such reduction and any nonair quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated." 42 U.S.C. § 7411(a)(1).

16. Section 111(b)(1)(B) further provides

> The Administrator shall, at least every 8 years, review and, if appropriate, revise such standards following the procedures required by this subsection for promulgation of such standards. Notwithstanding the requirements of the previous sentence, the Administrator need not review any such standard if the Administrator determines that such review is not appropriate in light of readily available information on the efficacy of such standard.

42 U.S.C. § 7411(b)(1)(B).

17. Although they are known as "New Source Performance Standards," it is important to note that the NSPS become applicable to existing facilities within the designated source categories whenever such existing facilities undertake any "modifications." See 42 U.S.C. § 7411(a)(2) (defining "new source" to include existing facilities that are modified after the publication of a NSPS applicable to that category of sources). The CAA further defines "modification" broadly, as "any physical change . . . or change in . . . method of operation . . . which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4). The NSPS are therefore potentially applicable to all existing coal preparation plants, as well as any new facilities constructed in the future.

## V. COAL PREPARATION PLANTS

18. Generally speaking, "coal preparation plants" are facilities which prepare coal for

burning by subjecting it to any of the following processes: breaking, crushing, screening, wet or dry cleaning, or thermal drying. See 40 C.F.R. § 60.251(a) (defining coal preparation plants). The equipment currently regulated at coal preparation plants includes "thermal dryers, pneumatic coal-cleaning equipment (air tables), coal processing and conveying equipment (including breakers and crushers), coal storage systems, and coal transfer and loading systems." 40 C.F.R. § 60.250(a). This equipment is also present at coal-fired power plants, making the coal-fired power plants subject to the coal preparation plant NSPS. The NSPS for these facilities impose emissions limitations for particulate matter ("PM") pollution and also limit the degree of opacity which may be exhibited by gases discharged into the atmosphere from such equipment. 40 C.F.R. § 60.252.

19. The EPA first promulgated the NSPS for coal preparation plants in 1976. See 41 Fed. Reg. 2232 (Jan. 15, 1976). These standards were subsequently reviewed in 1981 and again in 1989, with EPA deciding on each occasion that revision of the original NSPS was not appropriate. 46 Fed. Reg. 21,769 (Apr. 14, 1981); 54 Fed. Reg. 13,384 (Apr. 3, 1989).

20. Despite the statutory obligation to complete the next review of the coal preparation plant NSPS in 1997, EPA failed to undertake such a review. Further, according to the 8-year schedule established in Section 111, another review of the coal preparation plant NSPS should have been completed in April, 2005. However, EPA again failed to review these standards. Moreover, so far as Plaintiffs are aware, as of the date of this Complaint, EPA has still not even initiated a review of the coal preparation plant NSPS.

21. As a result of EPA's failure to complete the required review process and make the necessary changes to the existing NSPS for coal preparation plants, those NSPS no longer reflect the degree of emission limitation achievable through the application of the best adequately

demonstrated system of emission reduction. However, if EPA were to review and update as necessary the existing coal preparation plant NSPS, the issuance of more stringent revised standards that do reflect the degree of emission limitation achievable through the application of the best adequately demonstrated system of emission reduction would result in the emission of less pollution at the new and modified coal preparation plants to which the new standards would apply.

22.     While it is true that the CAA qualifies EPA's duty to review the coal preparation plant NSPS by providing that such a review need not be performed if "readily available information" confirms the efficacy of the existing standards, Defendant has not made a determination that review of the NSPS for coal preparation plants is inappropriate in light of readily available information on the efficacy of the current NSPS.

23.     Moreover, in this case readily available information clearly refutes the continued efficacy of these nearly 30 year-old standards. For example, the coal preparation plant NSPS contain limits for PM emissions based on the type of coal preparation equipment in use. Thus, for thermal dryers, the current NSPS limits PM emissions to 0.031 grains per dry standard cubic foot (grains/dscf) of exhaust air. 40 C.F.R. § 60.252(a)(1). The NSPS also limits the opacity of emissions from such equipment to 20%. Id. at 60.252(a)(2). This degree of emissions reduction does not reflect the emission limitation achievable through the best adequately demonstrated system of emission reduction. For example, in a recently issued Clean Air Act operating permit the Indiana Department of Environmental Management has imposed a limit of 0.01 grains/dcsf, or about one-third the NSPS limit, on a thermal dryer at an iron nugget production facility. See Permit for Auburn Nugget, LLC, No. T033-19475-00092, Condition D.3.1(c), page 59, available at

http://www.in.gov/idem/air/permits/Air-Permits-Online/index.html. This same permit also limits the opacity of the emissions from the dryer to 3%, an amount that is 85% less than what the NSPS require. See id. at page 106.

24. Another example is the Kentucky Natural Resources and Environmental Protection Cabinet recently issued a Clean Air Act permit to a coal-fired power plant which also surpasses the NSPS emission reduction requirements. This permit imposes an efficiency requirement on the bag house used to trap emissions from coal handling equipment. See Permit for Thoroughbred Generating Company, LLC, No. V-02-001 Revision 2, page 20 of 50, available at http://www.air.ky.gov/NR/rdonlyres/A98780C5-4F7C-4220-82A0-A52A6941A6EC/0/FinalR2_21705.pdf. The NSPS impose no such requirement.

25. The prevalence of emission reductions in Clean Air Act permits which surpass the NSPS is highly relevant to the adequacy of those NSPS. Section 111(b)(1)(B) provides that "[w]hen implementation and enforcement of any requirement of [the Clean Air Act] indicate that emission limitations and percent reductions beyond those required by [NSPS] are achieved in practice, the Administrator shall, when revising [NSPS], consider the emission limitations and percent reductions achieved in practice." 42 U.S.C. § 7411(b)(1)(B). Thus, emission limitations like those cited in the permits above are directly linked to a proper determination of what constitutes the correct NSPS for coal preparation plants.

26. Moreover, EPA's failure to examine the effectiveness of the coal preparation plant NSPS through two complete review cycles is especially disappointing given that EPA itself has recognized that the length of even a single review cycle often leads to NSPS becoming dated: "NSPS that are reviewed and amended every 8 years are unlikely to keep pace with technological improvements." 70 Fed. Reg. 9706, 9709 (Feb. 28, 2005).

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(CAA Sections 111(b)(1)(B) & 307(d))

27.   Each allegation set forth in the complaint is incorporated herein by reference.

28.   The deadline under CAA § 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), for Defendant to complete the review and revision process with respect to the NSPS for coal preparation plants expired several years ago. Nonetheless, Defendant has failed to perform these mandatory duties. Specifically, Defendant has failed to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate. Moreover, Defendant has failed to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for coal preparation plants, (2) notice of the issuance of any revisions to those NSPS, and (3) notice affording interested persons an opportunity for written comments on such proposed regulations. See 42 U.S.C. §§ 7411(b)(1)(B), 7607(d).

29.   Defendant's failure to perform each of the above actions constitutes a failure to perform an act or duty (or acts or duties) that are not discretionary with Defendant within the meaning of Clean Air Act § 304(a)(2). 42 U.S.C. § 7604(a)(2).

### (ALTERNATIVE) SECOND CLAIM FOR RELIEF
(Administrative Procedure Act Section 706(1))

30.   Each allegation set forth in the complaint is incorporated herein by reference.

31.   The deadline under § 111(b)(1)(B) for Defendant to complete the review and revision

process with respect to the NSPS for coal preparation plants expired several years ago. Nonetheless, Defendant has failed to perform these actions. Specifically, Defendant has failed to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate. Moreover, Defendant has failed to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for coal preparation plants, (2) notice of the issuance of any revisions to those NSPS, and (3) notice affording interested persons an opportunity for written comments on such proposed regulations. See 42 U.S.C. §§ 7411(b)(1)(B), 7607(d).

32.   Defendant's failure to perform each of the above actions constitutes agency action unreasonably delayed and unlawfully withheld within the meaning of the Administrative Procedure Act. 5 U.S.C. § 706(1).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment providing the following relief:

A.   Declare that Defendant is in violation of his mandatory duty to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate every 8 years or in the alternative that it constitutes agency action unreasonably delayed and unlawfully withheld within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

B.   Order Defendant (a) to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate,

and (b) to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for coal preparation plants, (2) notice of the issuance of any revisions to those NSPS and (3) notice affording interested persons an opportunity for written comments on such proposed regulations -- all in accordance with expeditious deadlines prescribed by the Court, including deadlines for notices of proposed and final rulemaking and other interim milestones.

C. Retain jurisdiction of this action to ensure compliance with the Court's Order.

D. Award plaintiffs the costs of litigation in this action, including attorney's fees. See 42 U.S.C. § 7604(d).

E. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_____
Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
433 Chestnut Street
Berea, KY 40403
Tel: (859) 986-5402
Fax: (859) 986-1299
E-mail: rukeiley@igc.org

Counsel for Plaintiffs

Of Counsel:

Greg Howard
Staff Attorney
Appalachian Citizens Law Center
207 W. Court St., Ste. 202
Prestonsburg, KY 41653
Tel: (606) 886-1442
Fax: (606) 886-1455
E-mail: greg@appalachianlawcenter.org

Dated: February 2, 2006