UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                        )
                                                                        )
KENTUCKIANS FOR THE COMMONWEALTH  )
131 North Mill Street                                           )
London, KY 40741,                                             )
                                                                        )  Civ. No. 06CV00184 (RMU)
                                                                        )
FRIENDS OF THE CHATTAHOOCHEE    )
20181 SR 39                                                       )
Blakely, GA 39823,                                            )
                                                                        )
and                                                                   )
                                                                        )
SIERRA CLUB                                                     )
85 Second St., Second Floor                              )
San Francisco, CA 94105-3441                         )
                                                                        )
        Plaintiffs,                                             )
                                                                        )
vs.                                                                    )
                                                                        )
STEPHEN L. JOHNSON                                     )
Administrator                                                    )
United States Environmental Protection Agency  )
Ariel Ross Building                                             )
1200 Pennsylvania Avenue, N.W.                    )
Washington, DC 20460                                    )
                                                                        )
        Defendant.                                            )
_____)

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1

## I. INTRODUCTION

1. Plaintiffs KENTUCKIANS FOR THE COMMONWEALTH, FRIENDS OF THE CHATTAHOOCHEE, AND SIERRA CLUB challenge the failure of Defendant STEPHEN L. JOHNSON, Administrator of the United States Environmental Protection Agency ("EPA") to perform mandatory duties required by the Clean Air Act, 42 U.S.C. §§ 7401-7671q. Specifically, the Clean Air Act establishes a mandatory deadline for EPA to review the New Source Performance Standards ("NSPS") for coal preparation plants and for nonmetallic mineral processing plants, to update those standards as necessary, and to publish notice of such actions in the Federal Register. EPA has failed to meet these deadlines. Plaintiffs thus bring this action to protect the interests of their members who live in areas that are or will be affected by emissions of air pollutants from new or newly modified coal preparation plants and/or nonmetallic mineral processing plants.

## II. JURISDICTION, VENUE, and NOTICE

2. This is a Clean Air Act citizen suit. Thus, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

3. This Court has authority to award the relief sought pursuant to 42 U.S.C. § 7604(a), 28 U.S.C. §§ 2201 (declaratory relief) and 2202 (injunctive relief), and 5 U.S.C. §§ 705, 706.

4. The acts and omissions allegedly giving rise to the claims in this case occurred in the District of Columbia. Furthermore, Defendant Stephen L. Johnson officially resides in the District of Columbia. Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) and

(2).

5.    As required by the Clean Air Act, 42 U.S.C. § 7604(b)(2), on November 23, 2005, Plaintiffs Kentuckians for the Commonwealth, Friends of the Chattahoochee, and Sierra Club mailed to Defendant written notice of intent to sue regarding the violations alleged in this Complaint with respect to coal preparation plants.  On November 28, 2005, Plaintiff Sierra Club mailed to Defendant written notice of intent to sue regarding the violations alleged in this Complaint with respect to nonmetallic mineral processing plants.  More than sixty days have passed since Defendant received Plaintiffs' notice of intent to sue letters.  Defendant has not acted to remedy the violations alleged in this complaint.  Therefore, a present and actual controversy exists between the parties.

### III. PARTIES

6.    Plaintiff KENTUCKIANS FOR THE COMMONWEALTH ("KFTC") is an organization that strives to improve the quality of life for all Kentuckians.  KFTC has worked for over two decades to ensure that coal industry regulations are sufficiently protective of the environment.  Many of KFTC's members live and own homes near coal mines which operate coal preparation plants that are subject to the NSPS or may be subject in the future to the NSPS for such facilities.  The emissions from the coal preparation plants contribute to the layers of dust which cover the homes of these KFTC members.  EPA's ongoing failure to review the NSPS for coal preparation plants and to revise those NSPS to reflect the technological progress which has occurred over the last 16 years is partially responsible for the inconvenience and expense that KFTC's members have incurred and will incur as a result of the dust created by coal preparation plant emissions.

This dust problem would be reduced if EPA reviewed the NSPS for coal preparation plants and revised them as necessary to reflect the technological advances that have taken place in the last 16 years.

7.      Plaintiff FRIENDS OF THE CHATTAHOOCHEE ("FOC") is an organization dedicated to protecting the natural environment in southwest Georgia. FOC members live, work, recreate, and obtain spiritual and aesthetic pleasure from locations near a proposed coal-fired power plant that will be subject to the NSPS for coal preparation plants. The emissions from the proposed plant will adversely affect these locations, but the negative impacts would be reduced if EPA reviewed the NSPS for coal preparation plants and revised them as necessary to reflect the technological progress which has occurred since the last such review.

8.      Plaintiff SIERRA CLUB is one of the nation's oldest and largest environmental organizations. The Sierra Club has long been involved in air pollution issues. Sierra Club members live, work, farm, recreate, grow food, own land and structures, and obtain spiritual and aesthetic pleasure from locations that are adversely affected by the air pollution emitted from coal preparation plants and nonmetallic mineral processing plants which are subject to, or may in the future be subject to the NSPS. Sierra Club and its members are also active participants in the air pollution permitting process for numerous coal-fired power plants and steel mills which include as part of their operations coal preparation plant facilities and nonmetallic mineral processing plant facilities subject to the NSPS. In addition, Sierra Club members require timely information about the present state of air pollutant emissions control technology in order to conduct their air pollution control work. EPA's failure to undertake a review of the NSPS for coal preparation plants and nonmetallic mineral processing plants and to publish its conclusions

as to the continued efficacy of these standards adversely affects Sierra Club's ability to engage in its air pollution control work.

9.      The agency actions sought herein include completion of agency review of the adequacy of the existing NSPS for coal preparation plants and nonmetallic mineral processing plants and the making of any necessary revisions in those standards.  This review process offers Plaintiffs and their members and staff an opportunity to advocate for more accurate and protective NSPS. Plaintiffs and their members and staff have repeatedly availed themselves of such advocacy opportunities and will continue to do so in the future.  Failure to complete the NSPS review process deprives Plaintiffs' members and staff of these advocacy opportunities.

10.     The failures of Defendant challenged in this case have caused, are causing, and unless this Court grants the requested relief, will continue to cause Plaintiffs' members and staff injuries for which they have no adequate remedy at law.

11.     Defendant STEPHEN L. JOHNSON is the Administrator of the United States Environmental Protection Agency ("EPA").  In that role Administrator Johnson has been charged by Congress with the duty to administer the Clean Air Act, including the duty to review and revise as necessary the NSPS.

## IV. CLEAN AIR ACT REQUIREMENTS

12.     The Clean Air Act ("CAA") aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1).  To help meet this goal, section 111 of the Clean Air Act requires EPA to establish and update standards of performance for new and newly modified

5

sources of pollutant emissions. See 42 U.S.C. § 7411 (Standards of performance for new stationary sources).

13. Section 111(b)(1)(A) requires EPA to compile a list of categories of stationary sources which, in the judgment of the Administrator, "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A).

14. For each source category identified pursuant to section 111(b)(1)(A), section 111(b)(1)(B) requires EPA to promulgate standards of performance for new and modified sources within each such source category – the NSPS. 42 U.S.C. § 7411(b)(1)(B).

15. NSPS must reflect "the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such reduction and any nonair quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated." 42 U.S.C. § 7411(a)(1).

16. Section 111(b)(1)(B) further provides

> The Administrator shall, at least every 8 years, review and, if appropriate, revise such standards following the procedures required by this subsection for promulgation of such standards. Notwithstanding the requirements of the previous sentence, the Administrator need not review any such standard if the Administrator determines that such review is not appropriate in light of readily available information on the efficacy of such standard.

42 U.S.C. § 7411(b)(1)(B).

17. Although they are known as "New Source Performance Standards," it is important to note that the NSPS become applicable to existing facilities within the designated source categories whenever such existing facilities undertake any "modifications." See 42 U.S.C. § 7411(a)(2) (defining "new source" to include existing facilities that are modified after the publication of a NSPS applicable to that category of sources). The CAA further defines "modification" broadly,

6

as "any physical change . . . or change in . . . method of operation . . . which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4). The NSPS are therefore potentially applicable to all existing coal preparation plants, as well as any new facilities constructed in the future.

## V.  COAL PREPARATION PLANTS

18. Generally speaking, "coal preparation plants" are facilities which prepare coal for burning by subjecting it to any of the following processes: breaking, crushing, screening, wet or dry cleaning, or thermal drying. See 40 C.F.R. § 60.251(a) (defining coal preparation plants). The equipment currently regulated at coal preparation plants includes "thermal dryers, pneumatic coal-cleaning equipment (air tables), coal processing and conveying equipment (including breakers and crushers), coal storage systems, and coal transfer and loading systems." 40 C.F.R. § 60.250(a). This equipment is also present at coal-fired power plants, making the coal-fired power plants subject to the coal preparation plant NSPS. The NSPS for these facilities impose emissions limitations for particulate matter ("PM") pollution and also limits the degree of opacity which may be exhibited by gases discharged into the atmosphere from such equipment. 40 C.F.R. § 60.252.

19. The EPA first promulgated the NSPS for coal preparation plants in 1976. See 41 Fed. Reg. 2232 (Jan. 15, 1976). These standards were subsequently reviewed in 1981 and again in 1989, with EPA deciding on each occasion that revision of the original NSPS was not appropriate. 46 Fed. Reg. 21,769 (Apr. 14, 1981); 54 Fed. Reg. 13,384 (Apr. 3, 1989).

20.     Despite the statutory obligation to complete the next review of the coal preparation plant NSPS in 1997, EPA failed to undertake such a review. Further, according to the 8-year schedule established in Section 111, another review of the coal preparation plant NSPS should have been completed in April, 2005. However, EPA again failed to review these standards. Moreover, so far as Plaintiffs are aware, as of the date of this Complaint, EPA has still not even initiated a review of the coal preparation plant NSPS.

21.     As a result of EPA's failure to complete the required review process and make the necessary changes to the existing NSPS for coal preparation plants, those NSPS no longer reflect the degree of emission limitation achievable through the application of the best adequately demonstrated system of emission reduction. However, if EPA were to review and update as necessary the existing coal preparation plant NSPS, the issuance of more stringent revised standards that do reflect the degree of emission limitation achievable through the application of the best adequately demonstrated system of emission reduction would result in the emission of less pollution at the new and modified coal preparation plants to which the new standards would apply.

22.     While it is true that the CAA qualifies EPA's duty to review the coal preparation plant NSPS by providing that such a review need not be performed if "readily available information" confirms the efficacy of the existing standards, EPA has not made a determination that review of the NSPS for coal preparation plants is inappropriate in light of readily available information on the efficacy of the current NSPS.

23.     Moreover, in this case readily available information clearly refutes the continued efficacy of these nearly 30 year-old standards. For example, the coal preparation plant NSPS contain limits for PM emissions based on the type of coal preparation equipment in use. Thus, for

thermal dryers, the current NSPS limits PM emissions to 0.031 grains per dry standard cubic foot (grains/dscf) of exhaust air. 40 C.F.R. § 60.252(a)(1). The NSPS also limits the opacity of emissions from such equipment to 20%. Id. at 60.252(a)(2). This degree of emissions reduction does not reflect the emission limitation achievable through the best adequately demonstrated system of emission reduction. For example, in a recently issued Clean Air Act operating permit the Indiana Department of Environmental Management has imposed a limit of 0.01 grains/dcsf, or about one-third the NSPS limit, on a thermal dryer at an iron nugget production facility. See Permit for Auburn Nugget, LLC, No. T033-19475-00092, Condition D.3.1(c), page 59, available at http://www.in.gov/idem/air/permits/Air-Permits-Online/index.html. This same permit also limits the opacity of the emissions from the dryer to 3%, an amount that is 85% less than what the NSPS require. See id. at page 106.

24. A recent permit issued by the Illinois Environmental Protection Agency ("Illinois EPA") also demonstrates that emissions limitations beyond those required by the NSPS are achievable in practice. Thus, in a Clean Air Act construction permit for a coal-fired power plant, Illinois EPA limited PM emissions from all coal preparation facilities, including drying equipment to no more than 0.005 grains/dry standard cubic foot (gr/dscf), about one-sixth the PM concentration that the NSPS allow. See Permit for Indeck-Elwood, LLC, No. 197035AAJ, Condition 2.2(a)(i), page 27, available at illinois.sierraclub.org/news/101003permit.doc.

25. Another example is the Kentucky Natural Resources and Environmental Protection Cabinet recently issued a Clean Air Act permit to a coal-fired power plant which also surpasses the NSPS emission reduction requirements. This permit imposes an efficiency requirement on the bag house used to trap emissions from coal handling equipment. See Permit for

9

Thoroughbred Generating Company, LLC, No. V-02-001 Revision 2, page 20 of 50, <u>available at</u> http://www.air.ky.gov/NR/rdonlyres/A98780C5-4F7C-4220-82A0-A52A6941A6EC/0/FinalR2_21705.pdf.  The NSPS impose no such requirement.

26.     The prevalence of emission reductions in Clean Air Act permits which surpass the NSPS is highly relevant to the adequacy of those NSPS.  Section 111(b)(1)(B) provides that "[w]hen implementation and enforcement of any requirement of [the Clean Air Act] indicate that emission limitations and percent reductions beyond those required by [NSPS] are achieved in practice, the Administrator shall, when revising [NSPS], consider the emission limitations and percent reductions achieved in practice."  42 U.S.C. § 7411(b)(1)(B).  Thus, emission limitations like those cited in the permits above are directly linked to a proper determination of what constitutes the correct NSPS for coal preparation plants.

27.     Moreover, EPA's failure to examine the effectiveness of the coal preparation plant NSPS through two complete review cycles is especially disappointing given that EPA itself has recognized that the length of even a single review cycle often leads to NSPS becoming dated: "NSPS that are reviewed and amended every 8 years are unlikely to keep pace with technological improvements." 70 Fed. Reg. 9706, 9709 (Feb. 28, 2005).

## VI.  NONMETALLIC MINERAL PROCESSING PLANTS

28.     As defined by EPA, the category of "nonmetallic minerals" includes crushed or broken stone, sand and gravel, clay, rock salt, and well over a dozen other varieties of minerals found in the Earth's crust.  <u>See</u> 40 C.F.R. § 60.671 (defining nonmetallic minerals).  The term "nonmetallic mineral processing plants" covers "any combination of equipment that is used to

crush or grind any nonmetallic mineral wherever located." Id. Examples of the specific equipment regulated under the nonmetallic mineral processing plant NSPS includes crushers, grinding mills, belt conveyors, and enclosed truck or railcar loading stations. 40 C.F.R. § 60.670. Such equipment is present at some coal-fired power plants, making those coal-fired power plants subject to the nonmetallic mineral processing plant NSPS.

29.    The NSPS for nonmetallic mineral processing plants vary with the particular piece of equipment involved, but generally impose emissions limitations for particulate matter ("PM") pollution either by regulating the concentration of PM in the emissions from the equipment's smokestack, or by limiting the degree of opacity which may be exhibited by gases discharged into the atmosphere from such equipment. 40 C.F.R. § 60.672.

30.    The EPA first promulgated the NSPS for nonmetallic mineral processing plants in 1985. See 50 Fed. Reg. 31,328 (Aug. 1, 1985). These standards were subsequently reviewed in 1997, when EPA decided to maintain the existing emissions limits, while making several changes which clarified the scope of the standards and adjusted monitoring and reporting requirements. 62 Fed. Reg. 31,351 (June 9, 1997).

31.    Despite the statutory obligation to complete a second review of the nonmetallic mineral processing plant NSPS in June 2005, EPA has failed to undertake such a review. Moreover, so far as Plaintiffs are aware, as of the date of this First Amended Complaint, EPA has still not even initiated a review of the nonmetallic mineral processing plant NSPS.

32.    As a result of EPA's failure to complete the required review process and make the necessary changes to the existing NSPS for nonmetallic mineral processing plants, those NSPS no longer reflect the degree of emission limitation achievable through the application of the best adequately demonstrated system of emission reduction. However, if EPA were to review and

update as necessary the existing nonmetallic mineral processing plant NSPS, the issuance of more stringent revised standards that do reflect the degree of emission limitation achievable through the application of the best adequately demonstrated system of emission reduction would result in the emission of less pollution at the new and modified nonmetallic mineral processing plants to which the new standards would apply.

33.     While it is true that the CAA qualifies EPA's duty to review the nonmetallic mineral processing plant NSPS by providing that such a review need not be performed if "readily available information" confirms the efficacy of the existing standards, EPA has not made a determination that review of the NSPS for nonmetallic mineral processing plants is inappropriate in light of readily available information on the efficacy of the current NSPS.

34.     Moreover, in this case readily available information clearly refutes the continued efficacy of these 20 year-old standards. For example, the current NSPS limits smokestack PM emissions to 0.022 grains per dry standard cubic foot (grains/dscf) of exhaust air. 40 C.F.R. § 60.672(a)(1). This degree of emissions reduction does not reflect the emission limitation achievable through the best adequately demonstrated system of emission reduction. For example, in the same Clean Air Act construction permit referenced in paragraph 24 above, Illinois EPA imposed a PM limit of 0.005 grains/dscf on the stack emissions from nonmetallic mineral processing equipment. See Permit for Indeck-Elwood, LLC, No. 197035AAJ, Condition 2.2(a)(i), page 27, available at illinois.sierraclub.org/news/101003permit.doc. This limit is less than one-fourth the PM concentration permissible under the NSPS.

35.     Similarly, the Pennsylvania Department of Environmental Protection ("Pennsylvania DEP") imposed the same more stringent PM standard with respect to nonmetallic mineral processing equipment. When granting approval to the construction of a new coal-fired power

plant, Pennsylvania DEP limited nonmetallic mineral processing emissions to 0.005 grains/dscf. See Permit for Wellington Development WVDT LLC, No. PA-30-00150A, Condition 4(e), page 6, available at http://www.co.greene.pa.us/secured/gc/notices/PublicNotice/050607DEP.pdf (page 27 of 32).

36.     The prevalence of emission reductions in Clean Air Act permits which surpass the NSPS is highly relevant to the adequacy of those NSPS.  Section 111(b)(1)(B) provides that "[w]hen implementation and enforcement of any requirement of [the Clean Air Act] indicate that emission limitations and percent reductions beyond those required by [NSPS] are achieved in practice, the Administrator shall, when revising [NSPS], consider the emission limitations and percent reductions achieved in practice."  42 U.S.C. § 7411(b)(1)(B).  Thus, emission limitations like those cited in the permits above are directly linked to a proper determination of what constitutes the correct NSPS for nonmetallic mineral processing plants.

37.     Moreover, EPA's failure to examine the effectiveness of the nonmetallic mineral processing plant NSPS is especially disappointing given that EPA itself has recognized that the length of the NSPS review cycle often leads to NSPS becoming dated: "NSPS that are reviewed and amended every 8 years are unlikely to keep pace with technological improvements."  70 Fed. Reg. 9706, 9709 (Feb. 28, 2005).

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(CAA Sections 111(b)(1)(B) & 307(d))

38.     Each allegation set forth in the complaint is incorporated herein by reference.

39.     The deadline under CAA § 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), for EPA to

13

complete the review and revision process with respect to the NSPS for coal preparation plants expired several years ago. Nonetheless, EPA has failed to perform these mandatory duties. Specifically, EPA has failed to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate. Moreover, EPA has failed to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for coal preparation plants, (2) notice of the issuance of any revisions to those NSPS, and (3) notice affording interested persons an opportunity for written comments on such proposed regulations. See 42 U.S.C. §§ 7411(b)(1)(B), 7607(d).

40. EPA's failure to perform each of the above actions constitutes a failure to perform an act or duty (or acts or duties) that are not discretionary with EPA within the meaning of Clean Air Act § 304(a)(2). 42 U.S.C. § 7604(a)(2).

(ALTERNATIVE) SECOND CLAIM FOR RELIEF
(Administrative Procedure Act Section 706(1))

41. Each allegation set forth in the complaint is incorporated herein by reference.

42. The deadline under § 111(b)(1)(B) for EPA to complete the review and revision process with respect to the NSPS for coal preparation plants expired several years ago. Nonetheless, EPA has failed to perform these actions. Specifically, EPA has failed to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate. Moreover, EPA has failed to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for coal preparation plants, (2) notice of the issuance of any revisions to those NSPS, and (3) notice affording interested persons an opportunity for written comments on such proposed regulations. See 42 U.S.C. §§ 7411(b)(1)(B), 7607(d).

43.     EPA's failure to perform each of the above actions constitutes agency action unreasonably delayed and unlawfully withheld within the meaning of the Administrative Procedure Act.  5 U.S.C. § 706(1).

THIRD CLAIM FOR RELIEF
(CAA Sections 111(b)(1)(B) & 307(d))

44.     Each allegation set forth in the complaint is incorporated herein by reference.

45.     The deadline under CAA § 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), for EPA to complete the review and revision process with respect to the NSPS for nonmetallic mineral processing plants expired nearly one full year ago.  Nonetheless, EPA has failed to perform these mandatory duties.  Specifically, EPA has failed to complete a thorough review of the effectiveness of the existing NSPS for nonmetallic mineral processing plants and make such revisions in those NSPS as may be appropriate.  Moreover, EPA has failed to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for nonmetallic mineral processing plants, (2) notice of the issuance of any revisions to those NSPS, and (3) notice affording interested persons an opportunity for written comments on such proposed regulations.  See 42 U.S.C. §§ 7411(b)(1)(B), 7607(d).

46.     EPA's failure to perform each of the above actions constitutes a failure to perform an act or duty (or acts or duties) that are not discretionary with EPA within the meaning of Clean Air Act § 304(a)(2).  42 U.S.C. § 7604(a)(2).

(ALTERNATIVE) FOURTH CLAIM FOR RELIEF
(Administrative Procedure Act Section 706(1))

47.     Each allegation set forth in the complaint is incorporated herein by reference.

48.     The deadline under § 111(b)(1)(B) for EPA to complete the review and revision process with respect to the NSPS for nonmetallic mineral processing plants expired nearly one full year ago.  Nonetheless, EPA has failed to perform these actions.  Specifically, EPA has failed to complete a thorough review of the effectiveness of the existing NSPS for nonmetallic mineral processing plants and make such revisions in those NSPS as may be appropriate.  Moreover, EPA has failed to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for nonmetallic mineral processing plants, (2) notice of the issuance of any revisions to those NSPS, and (3) notice affording interested persons an opportunity for written comments on such proposed regulations.  See 42 U.S.C. §§ 7411(b)(1)(B), 7607(d).

49.     EPA's failure to perform each of the above actions constitutes agency action unreasonably delayed and unlawfully withheld within the meaning of the Administrative Procedure Act.  5 U.S.C. § 706(1).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment providing the following relief:

A.     Declare that Defendant is in violation of his mandatory duty to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate every 8 years or in the alternative that it constitutes agency action unreasonably delayed and unlawfully withheld within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

B.  Declare that Defendant is in violation of his mandatory duty to complete a thorough review of the effectiveness of the existing NSPS for nonmetallic mineral processing plants and make such revisions in those NSPS as may be appropriate every 8 years or in the alternative that it constitutes agency action unreasonably delayed and unlawfully withheld within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

C.  Order Defendant (a) to complete a thorough review of the effectiveness of the existing NSPS for coal preparation plants and make such revisions in those NSPS as may be appropriate, and (b) to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for coal preparation plants, (2) notice of the issuance of any revisions to those NSPS and (3) notice affording interested persons an opportunity for written comments on such proposed regulations -- all in accordance with expeditious deadlines prescribed by the Court, including deadlines for notices of proposed and final rulemaking and other interim milestones.

D.  Order Defendant (a) to complete a thorough review of the effectiveness of the existing NSPS for nonmetallic mineral processing plants and make such revisions in those NSPS as may be appropriate, and (b) to publish in the Federal Register (1) a revision decision concerning the efficacy of the existing NSPS for nonmetallic mineral processing plants, (2) notice of the issuance of any revisions to those NSPS and (3) notice affording interested persons an opportunity for written comments on such proposed regulations -- all in accordance with expeditious deadlines prescribed by the Court, including deadlines for notices of proposed and final rulemaking and other interim milestones.

E.  Retain jurisdiction of this action to ensure compliance with the Court's Order.

F.  Award plaintiffs the costs of litigation in this action, including attorney's fees. See 42 U.S.C. § 7604(d).

G.    Grant such other relief as the Court deems just and proper.

                    Respectfully submitted,

_____
Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
433 Chestnut Street
Berea, KY 40403
Tel: (859) 986-5402
Fax: (859) 986-1299
E-mail: rukeiley@igc.org

Greg Howard
Admitted *Pro Hac Vice*
Staff Attorney
Appalachian Citizens Law Center
207 W. Court St., Ste. 202
Prestonsburg, KY 41653
Tel: (606) 886-1442
Fax: (606) 886-1455
E-mail: greg@appalachianlawcenter.org

Counsel for Plaintiffs

Dated: April 12, 2006